STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR ASSOCIATION, RELATOR, V. DANIEL E. PULLEN, RESPONDENT.

615 N.W.2d 474

Filed July 28, 2000.    No. S-00-087.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

Daniel E. Pullen, respondent, was admitted to the practice of law in the State of Nebraska on September 25, 1991. On January 28, 2000, the Committee on Inquiry of the Fifth Disciplinary District of the Nebraska State Bar Association, relator, filed formal charges against Pullen.

On January 28, 2000, the relator also filed a stipulation it had entered into with Pullen. In the stipulation, Pullen waived his right to a hearing on the charges, waived consideration by the Disciplinary Review Board, and consented to the filing of the formal charges with this court. Pullen acknowledged receipt of the formal charges and waived formal service of the same upon him.

In the stipulation, Pullen admitted the allegations set forth in the formal charges, admitted he violated his oath of office as an attorney, and admitted his conduct violated the following provisions of the Code of Professional Responsibility: Canon 1, DR 1-102; Canon 6, DR 6-101; and Canon 9, DR 9-102:

> DR 1-102 Misconduct.
> (A) A lawyer shall not:
> (1) Violate a Disciplinary Rule.
> . . . .

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice. Once a lawyer is employed in a professional capacity, the lawyer should not, in the course of such employment, engage in adverse discriminatory treatment of litigants, witnesses, lawyers, judges, judicial officers, or court personnel on the basis of the person's race, national origin, gender, or religion. This subsection does not preclude legitimate advocacy when these factors are issues in a proceeding.

. . . .

DR 6-101 Failing to Act Competently.

(A) A lawyer shall not:

. . . .

(3) Neglect a legal matter entrusted to him or her.

. . . .

DR 9-102 Preserving Identity of Funds and Property of a Client.

(A) All funds of clients paid to a lawyer or law firm shall be deposited in one or more identifiable bank or savings and loan association accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:

(1) Funds reasonably sufficient to pay account charges may be deposited therein.

(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.

(B) A lawyer shall:

. . . .

(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession

of the lawyer and render appropriate accounts to the client regarding them.

(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.

Pursuant to the stipulation entered into between Pullen and the relator and filed with this court on January 28, 2000, this court appointed a referee on February 9 to hear evidence and make a recommendation as to the appropriate sanction to be imposed. A referee hearing was held on April 13, at which Pullen appeared and testified.

■ On June 2, 2000, the referee filed his report. The parties did not file written exceptions. Neb. Ct. R. of Discipline 10(L) (rev. 1996) provides that where no exceptions are filed, the Nebraska Supreme Court may consider the referee's findings final and conclusive. Based upon the referee's report, we conclude that the formal charges are supported by the evidence.

Relator has filed a motion for judgment under rule 10(L). Relator's motion under rule 10(L) is granted, and Pullen is suspended from the practice of law as set forth below.

## FACTS

Pullen is 34 years old and has been practicing law in Nebraska since his admission to practice in 1991. For the first 5 years of his practice, Pullen was associated with other lawyers in the practice of law. In April 1992, he became the assistant public defender for York County, Nebraska, and in January 1995, he became the public defender for York County. Toward the end of 1995, he began practicing privately as a sole practitioner. Prior to the filing of the formal charges in the instant case, no other reprimands or charges had been filed against Pullen.

Pullen admits that he suffers from an addiction to alcohol and believes the current formal charges are directly related to his alcohol addiction. Pullen voluntarily completed a 30-day alcohol treatment program in February 2000, and at the referee hearing, he testified that he has remained sober since his treatment. He further testified that he does not intend to practice law until he has completed a period of sobriety as well as completed the sanctions imposed by this court in this disciplinary proceeding.

At the time of the referee hearing, Pullen had withdrawn from his representation of all clients in his private practice. He further represented that he intended to continue to serve as the public defender for York County until June 30, 2000. At the time of the referee hearing, Pullen was driving a truck for a delivery service to support his family.

On May 26, 2000, Pullen entered into a contract with the monitoring program of the Nebraska Lawyers Assistance Program (NLAP), in which Pullen agreed to NLAP's monitoring of his recovery from alcohol addiction. The contract, by its terms, remains in force and effect from its effective date until the termination of any probationary period assigned by this court.

## COUNT I

As charged in count I and as established by the referee's report, on June 4, 1999, Pullen was contacted by Jon Seimer to represent Seimer in a custody modification action filed by Sari Buran, in which Buran sought to change custody of the parties' minor child from Seimer to Buran. Pullen received a $500 retainer for his services. Pullen informed Seimer that he believed there was no basis to grant a change of custody and that Buran's application would not succeed.

Trial on Buran's application was set for August 10, 1999, and Seimer requested that Pullen reschedule the hearing because the minor child would be with Buran for summer visitation. Pullen agreed to seek a continuance.

On June 29, 1999, Seimer left a message on Pullen's answering machine asking Pullen to call him. Pullen did not return the call. On July 6, Seimer telephoned Pullen to ask about the case and whether the hearing date had been continued. Pullen told Seimer the motion for continuance was being prepared and there was nothing to worry about. On July 23, 24, and 26, Seimer left messages on Pullen's answering machine, asking Pullen to call him. Pullen returned Seimer's telephone calls on July 26 by leaving a message on Seimer's answering machine.

On July 26, 1999, Seimer's wife, Julie Seimer, returned Pullen's call. During his conversation with Julie Seimer, Pullen stated that the motion to continue the hearing had been filed and that the motion had been granted. Pullen advised Julie Seimer

that no new hearing date had been set because an appointment with a child custody officer would need to be scheduled.

At the time Pullen represented to Julie Seimer that the August 10, 1999, hearing had been continued, he knew that representation was not a true statement. Pullen did not file a motion for continuance and request for the appointment of a child custody officer until August 9. Pullen telephoned Buran's attorney regarding the requested continuance. Buran's attorney would not agree to the continuance unless Seimer agreed to a temporary change of custody. Without contacting Seimer, Pullen agreed to the temporary change of custody.

On August 10, 1999, Pullen participated telephonically in a hearing on the application to modify custody and stipulated to the temporary change of custody of the minor child, to the suspension of Buran's child support obligation, and to the continuance of the hearing on the application to modify until December 23. At the time Pullen entered into the stipulation, he had not discussed the matter with Seimer and Seimer had not agreed to the temporary change of custody.

On August 10, 1999, Seimer contacted the district court clerk's office to verify that the hearing on Buran's application to modify custody had been continued. The clerk's office informed Seimer the hearing had been continued until December 23 but that Pullen had agreed that temporary custody of the minor child be granted to Buran. Thereafter, Seimer made repeated attempts to contact Pullen, which attempts were unsuccessful because Pullen had disconnected his answering machine.

Later on August 10, 1999, Seimer contacted another attorney, Daniel P. Bracht, to see if Bracht could determine what had happened at the hearing. Bracht made repeated attempts to locate Pullen and left several messages at Pullen's public defender's office, but Pullen did not return Bracht's calls.

Thereafter, Pullen failed to deliver to Seimer the contents of the file maintained by Pullen on the change of custody litigation or to return Seimer's $500 retainer, despite repeated requests. Pullen did not, however, negotiate Seimer's check.

## COUNT II

As charged in count II and as established by the referee's report, on or about February 24, 1998, Deb Kottwitz, on behalf

of her daughter, Lori Kottwitz, hired Pullen for the purpose of representing Lori Kottwitz in a divorce proceeding and to handle a name change and guardianship matter involving a minor child of Lori Kottwitz. Deb Kottwitz paid Pullen a total of $1,625 in advance fees for these matters.

The divorce was completed in October 1998, at which time Pullen prepared a billing statement for Lori Kottwitz in which he charged her $400 for her divorce and debited the same from his trust account. Deb Kottwitz repeatedly attempted to contact Pullen regarding the name change and guardianship matters, but Pullen did not return her telephone calls. Pullen took no action to complete the name change or guardianship matters for over 18 months.

Upon receipt of a letter from the office of the Counsel for Discipline regarding a complaint filed by Deb Kottwitz, Pullen sent Deb Kottwitz his trust account check dated September 17, 1999, in the amount of $1,153.68. Pullen failed to respond to the Counsel for Discipline's requests for information regarding Deb Kottwitz' payments or his trust account. A review of Pullen's trust account records produced in response to a subpoena sent to Pullen's bank shows that Pullen was out of trust with regard to Deb Kottwitz' funds from April 1 to September 20, on which date Pullen deposited $400 in his trust account to cover his September 17 check to Deb Kottwitz. Deb Kottwitz has been made whole.

## DISCIPLINE

As noted above, Pullen stipulated to the allegations of the formal charges and did not take exception to the findings in the report of the referee. We, therefore, conclude that the findings in the report of the referee are final and conclusive. See rule 10(L). Accordingly, the sole issue in this case is what the appropriate sanction should be. To determine whether and to what extent discipline should be imposed in an attorney discipline proceeding, we consider the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance and reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's present or future fitness to continue in the prac-

tice of law. *State ex rel. NSBA v. Johnson*, 256 Neb. 495, 590 N.W.2d 849 (1999); *State ex rel. NSBA v. Schleich*, 254 Neb. 872, 580 N.W.2d 108 (1998). Each case must be evaluated individually in light of its particular facts and circumstances. *Id.* For the purpose of determining the proper discipline, we consider Pullen's actions in the underlying events of the case and throughout the disciplinary proceeding. See, *State ex rel. NSBA v. Johnson, supra*; *State ex rel. NSBA v. Schmeling*, 247 Neb. 735, 529 N.W.2d 799 (1995).

■ Pullen has readily admitted his misconduct and acknowledged responsibility for his actions. He has also acknowledged that his violations have harmed the public. These actions

> [reflect] positively upon his attitude and character and [are] factor[s] which we consider in determining the appropriate discipline, bearing in mind that the purpose of a disciplinary proceeding against an attorney is not so much to punish the attorney as it is to determine whether in the public interest an attorney should be permitted to practice.

See *State ex rel. NSBA v. Aupperle*, 256 Neb. 953, 963, 594 N.W.2d 602, 608 (1999). See, also, *State ex rel. NSBA v. Barnett*, 248 Neb. 601, 537 N.W.2d 633 (1995).

Pullen has also admitted his addiction to alcohol and believes that alcoholism is the primary cause for his misconduct in violation of the attorney disciplinary rules and his oath of office as an attorney. The record reflects that Pullen has satisfactorily completed a 30-day treatment program for alcoholism and that Pullen has remained sober since completing the treatment program.

■ Mitigating circumstances shown in the record are considered in determining the appropriate discipline imposed on an attorney for violating the Code of Professional Responsibility. *State ex rel. NSBA v. Aupperle, supra*; *State ex rel. NSBA v. Gleason*, 248 Neb. 1003, 540 N.W.2d 359 (1995). We have recognized that while substance abuse in no way justifies or excuses attorney misconduct, the facts that an attorney has acknowledged the condition, voluntarily sought treatment, and terminated use of the substance may under some circumstances be considered as mitigating factors in a disciplinary proceeding. *State ex rel. NSBA v. Aupperle, supra*; *State ex rel. NSBA v.*

*Miller*, 225 Neb. 261, 404 N.W.2d 40 (1987). Whether such factors warrant the mitigation of discipline in any particular case depends upon the particular facts and circumstances of the attorney's misconduct. *State ex rel. NSBA v. Aupperle, supra*; *State ex rel. NSBA v. Woodard*, 249 Neb. 40, 541 N.W.2d 53 (1995).

■ The propriety of a sanction must be considered with reference to the sanctions imposed by this court in prior cases presenting similar circumstances. See *State ex rel. NSBA v. Freese*, 259 Neb. 530, 611 N.W.2d 80 (2000). In *State ex rel. NSBA v. Aupperle, supra*, six disciplinary counts were filed against the attorney, each of which alleged that he had neglected his clients' cases. In the first count, it was also alleged that Aupperle had lied to his client about filing suit, when in fact no suit had been filed. Aupperle cooperated with the Counsel for Discipline and admitted the allegations against him. He raised his alcoholism as a mitigating factor and showed evidence that he was addressing his alcohol addiction. This court indefinitely suspended Aupperle's license to practice law for a minimum of 2 years and provided that he could regain his license upon showing his future fitness to practice law.

The referee in the instant case has recommended that Pullen receive a sanction similar to that imposed in the *Aupperle* case. In the motion for judgment, the Assistant Counsel for Discipline agrees that such a sanction would be appropriate in this case.

Pullen's offenses as described above are serious violations of the Code of Professional Responsibility. Pullen's acts of misconduct have harmed both his clients and the reputation of the bar as a whole. We note, however, that all of the disciplinary violations which we consider in this case occurred during a period of approximately 1 year, and Pullen had no prior history of disciplinary violations. Pullen appears to have made sincere and productive efforts to confront his alcoholism and to obtain the necessary professional treatment. We agree with the recommendations of the referee and the Assistant Counsel for Discipline that a sanction similar to that imposed in *State ex rel. NSBA v. Aupperle*, 256 Neb. 953, 594 N.W.2d 602 (1999), is appropriate in the instant matter.

Accordingly, we hereby suspend Pullen from the practice of law in the State of Nebraska for an indefinite period effective

upon the filing of this opinion, with no possibility of reinstatement prior to 18 months from the date of the filing of this opinion. Upon application for reinstatement, Pullen shall have the burden of proving that he has not practiced law during the period of suspension and that he has met the requirements of Neb. Ct. R. of Discipline 16 (rev. 1996). In addition, reinstatement shall be conditioned upon (1) the payment of all costs of this action, which are hereby taxed to Pullen; (2) Pullen's compliance with the terms of his May 26, 2000, contract with the NLAP's monitoring program; (3) a showing by independent third-party proof that Pullen has continued active participation in a recovery program and has maintained abstinence from the use of alcohol during the period of suspension; and (4) the submission by Pullen and approval by this court of a probation plan, to be in effect for a period of 2 years following reinstatement, whereby Pullen's recovery program and his compliance with the Code of Professional Responsibility would be monitored by the NLAP and the Counsel for Discipline. Failure to comply with the terms of the probation plan would constitute grounds for further disciplinary action. See *State ex rel. NSBA v. Barnett*, 248 Neb. 601, 537 N.W.2d 633 (1995).

## CONCLUSION

The referee's report was filed on June 2, 2000, and no exceptions were taken thereto. The relator filed a motion for judgment pursuant to rule 10(L). The motion is granted, and Pullen is suspended from the practice of law in the State of Nebraska in accordance with the conditions outlined in this opinion.

JUDGMENT OF SUSPENSION.