STATE OF NEBRASKA EX REL. NEBRASKA
STATE BAR ASSOCIATION, RELATOR,
v. KELLY M. HOGAN, RESPONDENT.
717 N.W.2d 470

Filed July 21, 2006. No. S-98-1228.

John W. Steele, Assistant Counsel for Discipline, for relator.

K.C. Engdahl and Karisa D. Johnson, of Ballew, Schneider, Covalt, Gaines & Engdahl, P.C., L.L.O., for respondent.

HENDRY, C.J., GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

PER CURIAM.

## NATURE OF CASE

Relator, the Counsel for Discipline of the Nebraska State Bar Association, now known as the Counsel for Discipline of the Nebraska Supreme Court, initiated this attorney discipline proceeding against respondent Kelly M. Hogan. Formal charges were filed against respondent alleging ethical violations. A referee was appointed who heard evidence, made findings of fact, and recommended discipline. No exceptions were filed to the referee's report. We sustained relator's motion for judgment on the pleadings in part and adopted the referee's findings. We reserved the issue of the appropriate discipline, directed briefing, and conducted oral argument. We now order respondent suspended from the practice of law with no possibility of reinstatement prior to January 1, 2008, followed by a 2-year period of probation.

## STATEMENT OF FACTS

The following facts are found in the referee's report: Respondent was admitted to the practice of law in the State of Nebraska on April 11, 1978. He was engaged in the private practice of law in Keith County, Nebraska, and he also served as the county attorney for Garden County, Nebraska.

In March 1992, respondent met D.F., who at the time had three minor children, one of whom was a daughter, A.H., born October 9, 1977. Respondent initially represented D.F. in a marriage dissolution proceeding. In late 1992, after his representation of D.F. had concluded, respondent entered into an intimate relationship with D.F. This relationship lasted until at least October 1998. During his relationship with D.F., respondent maintained a paternal relationship with D.F.'s children, including spending days and nights in D.F.'s home, offering the children advice, lending them money, discussing problems and acting as their confidante, helping them with homework, babysitting them when D.F. was away, taking them to their doctor appointments, preparing their

meals, taking them to extracurricular activities, and showing them affection by hugging and kissing them on the cheek.

Throughout respondent's relationship with D.F., he was suffering from a sexual compulsive disorder, which was evidenced in part by respondent's maintaining simultaneous intimate relationships with multiple women. In 1998, as a result of his disorder, respondent "peep[ed] through the window of D.F.'s home" to observe her youngest daughter. In May 1998, also as a result of respondent's sexual compulsive disorder, respondent masturbated and ejaculated on A.H.'s back as she sat at respondent's computer while respondent was helping her with college homework. A.H. was 20 years old at the time of this incident. As a result of respondent's behavior, D.F. filed a petition for and received a harassment protection order against respondent dated October 9, 1998, which order essentially restrained respondent from any contact with D.F. and members of her household. Respondent did not challenge D.F.'s petition seeking the protection order.

On November 12, 1998, as a result of the harassment protection order, the chairperson of the Committee on Inquiry of the Sixth Disciplinary District filed with this court an application for temporary suspension of respondent's law license. On November 16, respondent filed his consent to an order of temporary suspension, and on November 25, we suspended respondent from the practice of law until further order of the court.

From November 30 through December 4, 1998, respondent attended and completed a "Survivors I Workshop" at a facility in Arizona offering treatment for mental and addictive disorders. The workshop was designed for individuals with sexual compulsive disorders. From January 11 through 15, 1999, respondent attended and completed a "Sexual Compulsivity Workshop" at the Arizona facility.

In April 1999, respondent moved to Albuquerque, New Mexico, and thereafter, he began attending "Sexaholics Anonymous" meetings. Respondent later moved to Dallas, Texas, where he claimed he attended "Sex Addicts Anonymous" meetings. After a year in Dallas, respondent returned to Albuquerque, where he claimed he resumed his attendance at Sexaholics Anonymous meetings. Finding them "lacking," respondent claimed he formed with others a Sex Addicts Anonymous group, which he asserts he attended.

In 2003 and again in 2005, respondent was evaluated by Dr. Timothy S. Strongin, a psychologist in Albuquerque. Strongin did not provide any treatment for respondent. Instead, Strongin conducted an "occupational eval[uation]" relative to respondent's "fitness for duty." In performing his evaluation, Strongin did not engage in any independent investigation of the circumstances leading to respondent's suspension from the practice of law. Rather, he relied upon respondent's self-reporting of his condition and his suspension from the practice of law. Respondent did not advise Strongin of the specific allegations or incidents that led to his suspension. Respondent instead told Strongin that he had been intimately involved with a woman and her daughter in a small community and that respondent had experienced some political strife that "he felt contributed to the exaggeration of the significance of [respondent's] personal behavior, or even unfair treatment as a result of those connections." Further, respondent related to Strongin that his compulsions to enter into romantic relationships occurred in his "early adulthood." At the time of the 1998 incidents, respondent was approximately 48 years of age. Strongin's understanding regarding respondent's condition was as follows:

> I believe that there was a time in his life years before in which he had been indiscre[et] in choosing his adult sex partners, that he was sorry he had done that, and he felt that some — when he was anxious he felt some compulsion to enter into a romantic relationship, and that would [lead] to the self defeating behavior . . . .

Based upon his evaluations of respondent, Strongin concluded that respondent suffered from no mental illness or mental defect.

On May 15 and June 6 and 26, 2003, respondent filed applications with this court seeking reinstatement. We denied respondent's applications, in effect because he had failed to show a present fitness to practice law. On April 7, 2004, respondent filed his fourth application seeking reinstatement. On April 28, we denied the application and ordered relator to continue its investigation of respondent.

On February 25, 2005, relator filed formal charges containing a single count against respondent. The formal charges generally alleged that respondent's actions relative to D.F. and A.H. violated

Canon 1, DR 1-102(A)(1) (violating disciplinary rule) and (6) (engaging in conduct that adversely reflects on fitness to practice law), and Canon 9, DR 9-101 (avoiding appearance of impropriety), as well as his oath of office as an attorney, Neb. Rev. Stat. § 7-104 (Reissue 1997). Respondent answered the formal charges on March 21, and a referee was appointed on March 30.

The referee hearing was held on November 17, 2005. A total of 23 exhibits were offered into evidence. Respondent testified in person. The testimony of Strongin and A.H. was introduced by deposition.

The referee filed her report on December 20, 2005. Based upon the evidence presented at the hearing, the referee found facts and concluded that respondent's actions constituted conduct that adversely reflected on respondent's fitness to practice law in contravention of DR 1-102(A)(1) and (6) and DR 9-101. The referee did not address whether respondent violated his oath of office as an attorney. The referee noted that respondent sought reinstatement to the practice of law and concluded that based upon her findings of fact, "the imposition of discipline [was] appropriate."

With regard to discipline, the referee recommended that respondent be suspended from the practice of law for a period of time, followed by a monitored probationary period of 2 years. The referee in effect recommended that respondent not be reinstated until he had "demonstrate[d] through verifiable means that treatment specific to his sexual compulsive disorder has resulted in a meaningful and sustained recovery."

As noted above, no objections were filed to the referee's report. On January 4, 2006, relator filed a motion for judgment on the pleadings. On January 25, this court granted the motion in part, adopting the referee's findings and setting for briefing and oral argument the issue of the appropriate discipline.

## ASSIGNMENT OF ERROR

The only issue before the court is the appropriate discipline to be entered against respondent.

## STANDARDS OF REVIEW

A proceeding to discipline an attorney is a trial de novo on the record, in which the Nebraska Supreme Court reaches a

conclusion independent of the findings of the referee. *State ex rel. Counsel for Dis. v. Petersen*, 271 Neb. 262, 710 N.W.2d 646 (2006). When no exceptions are filed to the referee's report, the Nebraska Supreme Court may consider the referee's findings final and conclusive. See *id.* To sustain a charge in a disciplinary proceeding against an attorney, the charge must be established by clear and convincing evidence. *State ex rel. Counsel for Dis. v. Horneber*, 270 Neb. 951, 708 N.W.2d 620 (2006).

## ANALYSIS

*Findings.*

 Under existing case law, the Nebraska Supreme Court is limited in its review to examining only those items to which the parties have taken exception. *State ex rel. Counsel for Dis. v. Petersen, supra*; *State ex rel. Counsel for Dis. v. Apker*, 263 Neb. 741, 642 N.W.2d 162 (2002). Under Neb. Ct. R. of Discipline 10(L) (rev. 2005), the Nebraska Supreme Court may, in its discretion, consider the referee's findings as final and conclusive. *State ex rel. Counsel for Dis. v. Petersen, supra.* As previously noted, there were no exceptions filed to the referee's report in this case, and in an earlier order, this court adopted the findings of the referee. Given this record, we find clear and convincing evidence that respondent's conduct, set forth above, violated DR 1-102(A)(1) and (6) and DR 9-101. We further find that respondent's conduct violated his oath of office as an attorney. See § 7-104. We note that all of the conduct at issue in this case occurred prior to the September 1, 2005, effective date of the Nebraska Rules of Professional Conduct and is, thus, governed by the now-superseded Code of Professional Responsibility.

*Factors Affecting Discipline to Be Imposed.*

 We have stated that " '[t]he basic issues in a disciplinary proceeding against a lawyer are whether discipline should be imposed and, if so, the type of discipline appropriate under the circumstances.' " *State ex rel. Counsel for Dis. v. Reilly*, 271 Neb. 465, 466-67, 712 N.W.2d 278, 279 (2006). Violation of a disciplinary rule is a ground for discipline. *State ex rel. Counsel for Dis. v. Petersen, supra.* With respect to the type of discipline appropriate in an individual case, we have stated that "[e]ach case justifying discipline of an attorney must be evaluated individually

in light of the particular facts and circumstances of that case." *State ex rel. Counsel for Dis. v. Hart*, 270 Neb. 768, 771, 708 N.W.2d 606, 609 (2005). Neb. Ct. R. of Discipline 4 (rev. 2004) provides that the following may be considered as discipline for attorney misconduct: (1) disbarment, (2) suspension, (3) probation, (4) censure and reprimand, (5) temporary suspension, or (6) private reprimand. See, also, rule 10(N).

For purposes of determining the proper discipline of an attorney, this court considers the attorney's acts both underlying the events of the case and throughout the proceeding. *State ex rel. Counsel for Dis. v. Rokahr*, 267 Neb. 436, 675 N.W.2d 117 (2004). To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, this court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law. *State ex rel. Counsel for Dis. v. Coe*, 271 Neb. 319, 710 N.W.2d 863 (2006). We have noted that the determination of appropriate discipline to be imposed on an attorney requires consideration of any aggravating and/or mitigating factors. See *State ex rel. Counsel for Dis. v. Hart, supra.*

*Discipline to Be Imposed.*

The evidence in the present case establishes that respondent engaged in highly inappropriate behavior, which at a minimum, violated the trust placed in him by D.F. and her children and adversely reflects on his fitness to practice law. With regard to respondent's actions, we agree with the referee's observation that

> [r]espondent's conduct in window peeping at D.F.'s youngest daughter is inexcusable and cannot be explained away as innocuous behavior. . . . Respondent's conduct in masturbating behind A.H. and ejaculating on her back while he was supposed to be helping her with a homework assignment is reprehensible. [R]espondent exploited his paternal relationship with A.H. and her younger sister. [Respondent's] conduct was exploitive, manipulative, and unjustifiable.

In her report, the referee noted that respondent was remorseful and ashamed regarding his conduct and that respondent

admitted his conduct violated the Code of Professional Responsibility.

Given the record in this case, the referee stated in her report that she "struggl[ed] mightily" when considering what recommendation to make regarding the appropriate discipline, in part because of the lack of current information with regard to respondent's treatment for his sexual compulsive disorder. In her report, the referee stated that Strongin's testimony concerning respondent's condition "as a whole is not particularly helpful in that it is based upon incomplete information and does not address the nature and extent of the sexual compulsions and other conduct (window peeping) that respondent engaged in and which resulted in respondent's temporary suspension." In reviewing the evidence adduced at the hearing, the referee stated that

> it is concerning . . . that there is very little evidence in the record relating to the respondent's sexual compulsive disorder. Keeping in mind that this is what resulted in the egregious behavior exhibited by respondent in 1998, one would expect evidence addressing the nature and extent of that disorder, the steps taken to address and treat that disorder including ongoing treatment to prevent a reoccurrence of such conduct, [and] corroboration of respondent's compliance with a treatment plan or relapse prevention plan by experts in the field of sexual disorders (particularly experts who are working or have worked with respondent on these issues) . . . . This evidence is lacking and the evidence that was adduced does not offer sufficient assurance that the public will be protected and the reputation of the bar promoted if respondent is allowed to return to the practice of law.
>
> . . . .
>
> The evidence which bears on the sexually compulsive behavior exhibited by respondent is simply too remote in time to be of help in determining whether respondent's sexual compulsions impede his fitness to practice law today.

We have reviewed the record, and we agree with the referee's assessment of the evidence. In particular, we find lacking a genuine acknowledgment of the conduct giving rise to these proceedings, a record of meaningful treatment, and an indication of

sustainable recovery. As a result, respondent has failed to demonstrate his present fitness to practice law.

Our main concern in determining what impact respondent's sexual compulsive disorder should have on his discipline is the overall protection of the public. As we have noted, "the purpose of a disciplinary proceeding against an attorney is not so much to punish the attorney as it is to determine whether in the public interest an attorney should be permitted to practice." *State ex rel. NSBA v. Frederiksen*, 262 Neb. 562, 568, 635 N.W.2d 427, 432-33 (2001). In this regard, in cases involving diagnosable behavioral issues, we have noted that the suspension of an attorney is not designed as a punishment; rather, it is meant as a time period in which the attorney can seek treatment without posing a danger to his or her clients. See *State ex rel. Counsel for Dis. v. Thompson*, 264 Neb. 831, 652 N.W.2d 593 (2002).

Upon due consideration of the record, we agree with the referee that a suspension for a period of time is necessary to adequately ensure there will be a demonstrated, meaningful, and sustained recovery before respondent is allowed to return to the practice of law and that reinstatement, if ordered, be followed by a period of probation on terms that we note below. Accordingly, we conclude that protection of the public demands respondent be suspended from the practice of law for an indefinite period, with no possibility of reinstatement prior to January 1, 2008. Compare, *State ex rel. Counsel for Dis. v. Petersen*, 271 Neb. 262, 710 N.W.2d 646 (2006), and *State ex rel. Counsel for Dis. v. Thompson, supra.* In the event respondent seeks reinstatement, respondent will have the burden of acknowledging the conduct giving rise to these proceedings and of showing by an independent and informed third party that treatment for respondent's sexual compulsive disorder has resulted in a meaningful and sustained recovery such that we can conclude he is fit to practice law.

In addition to requiring assurance regarding respondent's treatment and recovery, we are also concerned with the number of years that respondent has been away from the practice of law. For these reasons, we believe a period of probation following reinstatement is necessary. Accordingly, in the event respondent seeks reinstatement following his suspension, his reinstatement

will be conditioned upon the submission by respondent and approval by this court of a probation plan, to be in effect for a period of 2 years following reinstatement, whereby respondent's recovery program, his law practice and office management, and his compliance with the Nebraska Rules of Professional Conduct would be monitored by the Nebraska Lawyers Assistance Program and the Counsel for Discipline. Failure to comply with the terms of the probation plan would constitute grounds for further disciplinary action.

## CONCLUSION

We find by clear and convincing evidence that respondent violated DR 1-102(A)(1) and (6), DR 9-101, and his oath of office as an attorney. It is the judgment of this court that respondent be suspended from the practice of law for an indefinite period with no possibility of reinstatement prior to January 1, 2008, and, if reinstated, respondent shall be subject to 2 years' probation as outlined above. Respondent shall comply with Neb. Ct. R. of Discipline 16 (rev. 2004), and upon failure to do so, he shall be subject to punishment for contempt of this court. Furthermore, respondent is directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 1997), rule 10(P), and Neb. Ct. R. of Discipline 23 (rev. 2001) within 60 days after an order imposing costs and expenses, if any, is entered by this court.

JUDGMENT OF SUSPENSION.

WRIGHT, J., participating on briefs.

CONNOLLY and McCORMACK, JJ., not participating.