STATE OF NEBRASKA EX REL. COUNSEL FOR DISCIPLINE OF THE NEBRASKA SUPREME COURT, RELATOR, v. THOMAS M. PETERSEN, RESPONDENT.

725 N.W.2d 845

Filed January 19, 2007. No. S-06-182.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

INTRODUCTION

The issue presented in this attorney discipline proceeding is what discipline should be imposed on Thomas M. Petersen, respondent, for his violation of certain provisions of the Code of Professional Responsibility and his oath of office as an attorney.

Relator, the Counsel for Discipline of the Nebraska Supreme Court, filed formal charges against Petersen alleging unprofessional violations. Petersen filed an answer in which he admitted the allegations in the formal charges. Relator filed a motion for judgment on the pleadings, and in an order dated June 7, 2006, this court granted relator's motion, in part, by adopting the facts alleged in the formal charges as the facts in this case. A referee was appointed who heard evidence and recommended discipline. In his report, the referee noted that as a result of attorney misconduct unrelated to the instant case, Petersen is presently suspended from the practice of law for an indefinite period of time, with no possibility of reinstatement prior to February 1, 2008. See State ex rel. Counsel for Dis. v. Petersen, 271 Neb. 262, 710 N.W.2d 646 (2006). The referee recommended that Petersen remain indefinitely suspended with no possibility of

reinstatement prior to February 1, 2008, and that in the event Petersen is reinstated in the future, his reinstatement be followed by monitored probation for not less than 2 years.

No exceptions were filed to the referee's report, and relator has filed a motion for judgment on the pleadings. We grant the motion for judgment on the pleadings and impose discipline as indicated below.

## FACTS

The following facts are found in the formal charges: Petersen was admitted to the practice of law on April 14, 1995. On February 13, 2006, formal charges were filed by the office of the Counsel for Discipline, relator, against Petersen. The formal charges set forth three counts, which we summarize. The first count alleged that Timothy Diecker hired Petersen to represent Diecker in a criminal case and that Petersen neglected certain matters in Diecker's case, causing Diecker to retain other counsel. The second count alleged that Christopher Payne hired Petersen to represent him in two separate criminal· cases, as well as in a marriage dissolution action, and that Payne paid Petersen certain funds representing advanced fees. The second count further alleged that Petersen neglected certain matters during his representation of Payne, causing Payne· to retain other counsel; failed to account for the time he spent on Payne's legal matters so that Payne could determine whether Petersen earned the advanced fees; and failed to refund unearned fees. The third count alleged that both Diecker and Payne filed grievances against Petersen with relator and that Petersen, despite repeated requests for information from relator, failed to file any written responses to the grievances.

The formal charges alleged that by his actions, Petersen had violated the following provisions of the Code of Professional Responsibility: Canon 1, DR 1-102(A)(1) (violating disciplinary rule); DR 1-102(A)(5) (engaging in conduct prejudicial to administration of justice); Canon 2, DR 2-110(A)(3) (refunding unearned fees upon withdrawal from employment); Canon 6, DR 6-101(A)(2) (handling legal matter without adequate preparation); DR 6-101(A)(3) (neglecting legal matter); Canon 7, DR 7-101(A)(2) (failing to carry out contract of employment for

professional services); and Canon 9, DR 9-102(A) (maintaining trust account); and DR 9-102(B)(3) (maintaining records of funds); as well as his oath of office as an attorney, see Neb. Rev. Stat. § 7-104 (Reissue 1997).

As noted above, Petersen filed an answer in which he admitted the allegations in the formal charges. Relator filed a motion for judgment on the pleadings, which this court granted, in part, and ordered that "the facts alleged in the formal charges stand admitted and adopted by this Court as the facts in this case." We appointed a referee to conduct an evidentiary hearing limited to the issue of the appropriate discipline. An evidentiary hearing was held on July 31, 2006. Twelve exhibits were admitted into evidence, and Petersen appeared and testified as the only witness.

The referee filed a report on October 5, 2006. The substance of the referee's findings relative to discipline may be summarized as follows: On January 17, 2006, Petersen began a 90-day residential treatment program at SouthCoast Recovery Treatment Center (SouthCoast) in Dana Point, California, for alcohol and drug addiction, which he successfully completed. He currently resides in Dana Point, where he is working at SouthCoast as an intake counselor. We note that the record contains a letter from SouthCoast's "Director of Sober Living," in which he states the following:

> [Petersen] is an example of applying all of the tools of recovery and a[n] example of how those tools can redirect a person[']s life into a positive and productive [lifestyle]. His success is truly a miracle, and his continued effort at rebuilding his life is . . . completely on the right track. He has been and is a perfect example of how recovery works. It gives me great pleasure and pride to say I have seen his growth from beginning to this day. Recovery needs more people like [Petersen] who are not afraid to live life on life's terms, and remain a great example to all of those who come in contact with him that recovery is possible.

Petersen admitted he is addicted to vodka and cocaine. He testified that he began to use drugs and alcohol in 2001 and that he was under the influence of drugs and alcohol during his representation of Diecker and Payne. He stated he is "a competent

attorney when [he is] sober, and when [he is] not sober [he is] not." He stated that he wants to "maintain [his] sobriety [and he] want[s] to practice law again." He further testified to the effect that originally he only represented clients in criminal matters and that he began to use drugs and alcohol after he expanded his practice to include civil cases. He stated that in the event he returned to practice, he would limit himself to representing only clients in criminal cases.

According to the referee's report, Petersen has been regularly attending meetings of Alcoholics Anonymous and similar support groups. Since January 17, 2006, he has been subjected to random drug testing and has not tested positive during any test. On or about February 28, Petersen entered into a monitoring contract with the Nebraska Lawyers Assistance Program (NLAP), and a copy of the contract was admitted into evidence. In the contract, Petersen agreed to abstain from alcohol and "mind-altering" drugs, unless such drugs were prescribed by a physician and taken as prescribed. Petersen also agreed to submit to an attorney monitor, to attend Alcoholics Anonymous meetings, to submit to random drug testing, and to comply with any additional terms and conditions imposed by this court.

Finally, Petersen testified that he had reimbursed Payne for any unearned fees. He also testified that he was liquidating assets in the event he needed to reimburse any other former clients with fee grievances.

The referee noted in his report that Petersen had been the subject of three other disciplinary proceedings. In *State ex rel. Counsel for Dis. v. Petersen*, 264 Neb. 790, 652 N.W.2d 91 (2002), the formal charges alleged that Petersen had retained settlement funds to which he was not entitled. The evidence adduced did not support the formal charges. Although we determined that the evidence in the case showed that Petersen failed to supervise and control the activities of his employees and that his office management was sloppy, Petersen was not charged with that conduct, and we dismissed the formal charges.

In the second proceeding, *State ex rel. Counsel for Dis. v. Petersen*, 267 Neb. 176, 672 N.W.2d 637 (2004), relator filed a motion for reciprocal discipline after Petersen was suspended by the U.S. Court of Appeals for the Eighth Circuit for a period

of 30 days after he neglected a client's appeal. We granted relator's motion and imposed as reciprocal discipline a 30-day suspension.

In the third proceeding, *State ex rel. Counsel for Dis. v. Petersen*, 271 Neb. 262, 710 N.W.2d 646 (2006) (*Petersen III*), the sole issue in the case was the discipline to be imposed against Petersen, following his "serial neglect of client matters." *Id.* at 263, 710 N.W.2d at 648. The referee who had been appointed to hear evidence recommended that Petersen receive a 180-day suspension. We did not accept the referee's recommendation and instead suspended Petersen indefinitely from the practice of law with no possibility of reinstatement prior to February 1, 2008.

In *Petersen III*, the record contained Petersen's testimony in which he admitted that he suffered from substance abuse. The record further reflected that Petersen had been accepted to, but had not yet attended, a formal treatment program for substance abuse and that Petersen had not entered into a monitoring contract with NLAP.

In rejecting the referee's recommended discipline in *Petersen III*, we stated as follows:

Petersen's admissions of responsibility for his conduct have come only when faced with discipline, and even when discipline has been imposed, those sanctions have not prevented further misconduct. In fact, in some cases, new misconduct has arisen only days after the resolution of a previous disciplinary proceeding. It is one thing to admit responsibility for past actions, but quite another to display that responsibility by modifying behavior. This record displays some of the former, but none of the latter. To the contrary, while Petersen claims to be addressing his substance abuse problem, the record also evidences many other instances in which Petersen has claimed to have addressed the issues leading to his misconduct, only to have new issues arise.

The other dispositive factor is Petersen's present fitness to practice law, which is not demonstrated in the record before us. Petersen has professed to have turned over new leaves before. It is the sincere hope of this court that Petersen is able to solve the problems that have afflicted

him, whatever they may be. But unlike past incidents, in this case, Petersen will be required to demonstrate that he has addressed those problems before he is again placed in a position of trust. We accept the evidence that Petersen is seeking treatment, but we are unwilling to accept another of Petersen's assurances, that nothing similar will happen again, without proof to that effect.

271 Neb. at 271, 710 N.W.2d at 653.

In *Petersen III*, we determined that "protection of the public demands that Petersen be suspended from the practice of law for an indefinite period, with no possibility of reinstatement prior to February 1, 2008." *Id.* We further imposed conditions upon Petersen in the event he sought reinstatement to practice, by requiring him to show "by independent third-party proof that [he] has continued active participation in a recovery program and has maintained abstinence from the use of alcohol during the period of suspension" and by requiring him to submit, for the approval of this court, "a probation plan, to be in effect for a period of 2 years following reinstatement, whereby Petersen's recovery program, his office management, and his compliance with the Nebraska Rules of Professional Conduct would be monitored by [NLAP] and the Counsel for Discipline." *Id.* at 271-72, 710 N.W.2d at 653.

In the instant case, the referee, in making his recommendation regarding Petersen's discipline, stated that he found Petersen

to be sincere and remorseful for his past behavior. While it arguably took a longer period of time than it should have, it is clear that [Petersen] has admitted he has a serious problem with vodka and cocaine, [and] he has voluntarily entered and successfully completed an inpatient treatment program.

The referee further noted Petersen's employment as an intake counselor at SouthCoast, his regular attendance at support group meetings, and his entering into an NLAP monitoring contract. Finally, the referee noted that relator was not seeking Petersen's disbarment, but, rather, " 'an indefinite suspension . . . with the burden being placed on . . . Petersen [to] demonstrate to the Court his ability to return to the practice.' " In his report, the referee recommended that Petersen remain indefinitely suspended

with no possibility of reinstatement until February 1, 2008, and that in the event he is reinstated, such reinstatement be followed by a 2-year period of monitored probation.

No exceptions were filed to the referee's report. On October 17, 2006, relator filed a second motion for judgment on the pleadings, in which relator moved this court to enter judgment in conformity with the referee's report and recommendation.

## ANALYSIS

*Findings.*

We note that all of Petersen's conduct at issue in this case occurred prior to the September 1, 2005, effective date of the Nebraska Rules of Professional Conduct and is, therefore, governed by the now-superseded Code of Professional Responsibility.

A proceeding to discipline an attorney is a trial de novo on the record. *State ex rel. Counsel for Dis. v. Muia*, 271 Neb. 287, 711 N.W.2d 850 (2006). To sustain a charge in a disciplinary proceeding against an attorney, a charge must be supported by clear and convincing evidence. *State ex rel. Counsel for Dis. v. Horneber*, 270 Neb. 951, 708 N.W.2d 620 (2006). Under Neb. Ct. R. of Discipline 10(I) (rev. 2005), if no answer is filed to the formal charges, or if the answer does not raise an issue of fact or law, the Nebraska Supreme Court may, in its discretion, dispose of the matter on its own motion or on a motion for judgment on the pleadings. *State ex rel. Counsel for Dis. v. Jones*, 270 Neb. 471, 704 N.W.2d 216 (2005). Petersen filed an answer in which he admitted the allegations in the formal charges, and relator filed an initial motion for judgment on the pleadings. As previously noted, in an earlier order, this court granted relator's motion, in part, by adopting the facts alleged in the formal charges as the facts in this case. Given this record, we find clear and convincing evidence that Petersen's conduct, set forth above, violated DR 1-102(A)(1) and (5), DR 2-110(A)(3), DR 6-101(A)(2) and (3), DR 7-101(A)(2), and DR 9-102(A) and (B)(3), as well as his oath of office as an attorney, see § 7-104.

*Factors Affecting Discipline to Be Imposed.*

We have stated that the basic issues in a disciplinary proceeding against a lawyer are whether discipline should be imposed and, if so, the type of discipline appropriate under the

circumstances. *State ex rel. Counsel for Dis. v. Reilly*, 271 Neb. 465, 712 N.W.2d 278 (2006). Violation of a disciplinary rule concerning the practice of law is a ground for discipline. *State ex rel. Counsel for Dis. v. Hogan*, 272 Neb. 19, 717 N.W.2d 470 (2006).

Neb. Ct. R. of Discipline 4 (rev. 2004) provides that the following may be considered as discipline for attorney misconduct:

(A) Misconduct shall be grounds for:

(1) Disbarment by the Court; or

(2) Suspension by the Court; or

(3) Probation by the Court in lieu of or subsequent to suspension, on such terms as the Court may designate; or

(4) Censure and reprimand by the Court; or

(5) Temporary suspension by the Court; or

(6) Private reprimand by the Committee on Inquiry or Disciplinary Review Board.

(B) The Court may, in its discretion, impose one or more of the disciplinary sanctions set forth above.

See, also, rule 10(N).

With respect to the type of discipline appropriate in an individual case, we have stated that each case justifying the discipline of an attorney must be evaluated individually in light of the particular facts and circumstances of that case. *State ex rel. Counsel for Dis. v. Hogan, supra.* For purposes of determining the proper discipline of an attorney, this court considers the attorney's acts both underlying the events of the case and throughout the proceeding. *Id.* The determination of an appropriate penalty to be imposed on an attorney in a disciplinary proceeding also requires the consideration of any aggravating or mitigating factors. *Id.*

*Discipline to Be Imposed.*

In his report, the referee recommended that with respect to the discipline to be imposed, Petersen should remain indefinitely suspended from the practice of law with no possibility of reinstatement until February 1, 2008, and that in the event he is reinstated, such reinstatement be followed by a 2-year period of monitored probation. No exceptions were filed to the referee's report, and relator has filed a motion for judgment on the

pleadings, requesting that this court enter discipline against Petersen in conformity with the referee's recommendation.

Certainly under the circumstances presented in the instant case, disbarment could be an appropriate discipline. The disciplinary rules that Petersen has violated constitute serious misconduct, involving, in part, the mishandling of client funds. See, e.g., *State ex rel. Counsel for Dis. v. Jones*, 270 Neb. 471, 480, 704 N.W.2d 216, 224 (2005) (stating that "[m]isappropriation of client funds is one of the most serious violations of duty an attorney owes to clients, the public, and the courts, and typically warrants disbarment. . . . In the context of attorney discipline proceedings, misappropriation is any unauthorized use of client funds entrusted to an attorney"). Moreover, we note that this is the fourth disciplinary proceeding in which Petersen has appeared before this court.

Nonetheless, in cases like the present one involving serious misconduct, this court has on occasion imposed suspensions instead of disbarment. In *State ex rel. NSBA v. Jensen*, 260 Neb. 803, 619 N.W.2d 840 (2000), we suspended W. Mark Jensen indefinitely with no possibility of reinstatement for 2 years, at which time he would be required to submit to a 2-year probationary period and to comply with several reinstatement conditions. Jensen neglected clients and cases, failed to deposit client funds into his trust account, and failed to deliver promptly funds or other property in his possession to his clients. In determining the appropriate disciplinary measure, we considered Jensen's conduct both in the underlying events of the case and in the disciplinary proceedings. He admitted his misconduct and took responsibility for his actions. He made "sincere and productive efforts to confront" an alcohol problem, satisfactorily completed an alcohol treatment program, and remained sober thereafter. *Id.* at 814, 619 N.W.2d at 848. We ordered a sanction less than disbarment because of the mitigating circumstances that were present.

In *State ex rel. NSBA v. Pullen*, 260 Neb. 125, 615 N.W.2d 474 (2000), we ordered an indefinite suspension (for at least 18 months) with a conditional reinstatement. Daniel E. Pullen neglected legal matters entrusted to him, lied to a client about a motion he had not filed, agreed to a child custody modification

without his client's consent, failed to return file materials to a client despite the client's repeated requests, and mishandled his trust account. In determining the appropriate sanction, we considered the following mitigating circumstances: Pullen "readily admitted his misconduct[,] acknowledged responsibility for his actions [and] acknowledged that his violations ha[d] harmed the public." *Id.* at 132, 615 N.W.2d at 479. Those acknowledgments reflected positively upon his attitude and character. *Id.* Pullen also admitted he was addicted to alcohol and had satisfactorily completed an alcohol treatment program.

In the instant case, we note that Petersen has readily admitted his misconduct. Unlike *Petersen III*, the record in the instant case reflects that Petersen has taken steps to modify the behavior that has led to the imposition of attorney discipline. Moreover, Petersen's efforts to rehabilitate himself appear sincere and successful to some degree. The record reflects that Petersen has continued his involvement in support groups dealing with his addiction and that he has entered into an NLAP monitoring contract.

The referee has recommended discipline essentially concurrent with the discipline imposed against Petersen in *Petersen III*, and relator agrees with that recommendation. We agree with the referee's recommendation, and we grant relator's motion for judgment on the pleadings.

Upon due consideration of the record, the court finds that Petersen should remain indefinitely suspended from the practice of law with no possibility of reinstatement until February 1, 2008. In the event Petersen seeks reinstatement following his suspension, he will be required to show by independent third-party proof that he has continued active participation in a recovery program and has maintained abstinence from the use of drugs and alcohol during the period of suspension. He will further be required to submit a 2-year probation plan, for the approval of this court, whereby Petersen's recovery program, his office management, and his compliance with the Nebraska Rules of Professional Conduct would be monitored by NLAP and the Counsel for Discipline.

## CONCLUSION

Relator's motion for judgment on the pleadings is sustained. We find by clear and convincing evidence that Petersen violated

DR 1-102(A)(1) and (5), DR 2-110(A)(3), DR 6-101(A)(2) and (3), DR 7-101(A)(2), and DR 9-102(A) and (B)(3), as well as his oath of office as an attorney. It is the judgment of this court that Petersen should be and hereby remain indefinitely suspended from the practice of law with no possibility of reinstatement until February 1, 2008. In the event Petersen seeks and is granted reinstatement, his reinstatement will be conditioned on a 2-year period of monitored probation, subject to the terms set forth above. Petersen is directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 1997), disciplinary rule 10(P), and Neb. Ct. R. of Discipline 23(B) (rev. 2001) within 60 days after an order imposing costs and expenses, if any, is entered by the court.

JUDGMENT OF SUSPENSION.