759 N.W.2d 702 (2009)
277 Neb. 102
STATE of Nebraska ex rel. Counsel for Discipline of the Nebraska Supreme Court, relator,
v.
Jeffrey L. ORR, respondent.
No. S-07-911.
Supreme Court of Nebraska.
January 30, 2009.
*704 Kent L. Frobish, Assistant Counsel for Discipline, for relator.
Mark A. Christensen and Brandon K. Dickerson, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., Lincoln, for respondent.
HEAVICAN, C.J., GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
PER CURIAM.

INTRODUCTION
Jeffrey L. Orr, respondent in this attorney disciplinary proceeding, was found to have violated his oath of office as an attorney and to have violated disciplinary rules requiring an attorney to competently represent *705 a client. The only issue presented is the appropriate sanction to be imposed.

FACTS
The underlying conduct in this case involves Orr's representation of Steve Sickler and Cathy Mettenbrink in connection with the franchising of a coffee shop business. Sickler and Mettenbrink had opened their first coffee shop together, Barista's Daily Grind (Barista's), in Kearney, Nebraska, in December 2001. In September 2002, Sickler met with Orr and asked whether Orr could help Sickler and Mettenbrink franchise their business.
Orr was engaged in private practice in Kearney, and his experience with franchising was limited. Orr testified that he had read franchise agreements on behalf of clients who either were or were interested in becoming franchisees, but had never represented a franchisor. Orr's role in those cases had been to generally advise clients as to the rights of a franchisor and duties of a franchisee under the agreement. Orr's experience had required him to review franchise agreements and disclosure statements, but he had not reviewed state or federal law governing franchising.
In response to Sickler's inquiry, Orr stated that he had recently reviewed a franchisee's agreement and that he believed he could "handle" the franchising of Barista's. Orr told Sickler and Mettenbrink that he would begin working on a franchise agreement, and he completed the first draft in October 2002. Orr stated that he had recently reviewed a restaurant franchise agreement and then utilized that document when drafting the Barista's document. Although he had never before drafted a franchise agreement, Orr believed it was simply "a matter of contract drafting," which he believed he was competent to do. Orr contacted an attorney in Washington, D.C., for assistance with the trademark and copyright portions of franchising, and that attorney warned Orr that franchising was a specialized field.
In December 2002, Orr drafted a disclosure statement. Orr used the disclosure statement he had recently reviewed on behalf of the previously mentioned franchisee, as well as "FTC documents," to finish the statement in January 2003. Orr's understanding was that a disclosure statement was required by the Federal Trade Commission (FTC) in order to inform the franchisee of the more important terms and conditions of the franchise agreement.
From 2003 to 2006, Barista's sold 21 franchises. In July 2004, Sickler was contacted by a banker in Colorado, inquiring on behalf of a prospective franchisee. The banker requested the "UFOC" of Barista's, and, unaware of what a UFOC was, Sickler referred the banker to Orr. Orr determined that the then-current disclosure statement of Barista's was "compliant and valid" and could be used anywhere. Sickler testified that Orr told him that the UFOC was a requirement of federal law which Barista's was "probably going to have to get" if it was "going to be selling franchises out of state."
In August 2004, Orr revised the franchise agreement and disclosure statement at Sickler's request due to problems Barista's was having with a franchisee in Iowa. The Iowa franchisee had been provided with copies of the initial franchise agreement and disclosure statement. However, in February 2004, the Iowa franchisee's attorney sent a letter to Sickler suggesting that Barista's had not complied with federal disclosure requirements.
Sickler and Orr dispute at what point Orr was provided with a copy of that letter. But despite being aware that Barista's was working with prospective franchisees in Iowa and Colorado, Orr did not *706 advise Sickler to seek input from local counsel in those states. And Sickler testified that the revised franchise agreement and disclosure statement were also provided to prospective franchisees in Kansas.
In October 2004, due to an unrelated dispute, Sickler and Mettenbrink sued the Colorado franchisees to terminate the franchises. A counterclaim was filed alleging deceptive and unfair trade practices, violation of FTC rules, and violation of Nebraska's Seller-Assisted Marketing Plan Act.[1] Orr's associate, Bradley Holbrook, became lead counsel for this litigation, although Orr remained primarily responsible for the representation of Barista's. Holbrook researched Nebraska law and discussed the case with Orr, including the fact that the Colorado franchisees were challenging the disclosure statement.
Disagreements were also ongoing with the Iowa franchisee, who eventually demanded rescission of the franchise agreement based on Barista's failure to comply with federal and Iowa disclosure laws. The Iowa franchisee's attorney demanded that Sickler return the franchise fee and pay attorney fees and other damages, and informed Sickler that he and Mettenbrink could be held personally liable under certain provisions of Iowa law. Sickler then informed Orr of the problem. Orr advised Sickler that the firm was going to contact an Omaha, Nebraska, attorney for a second opinion. Holbrook then contacted the Omaha attorney for a second opinion, which was provided in a June 2005 memorandum. It is not clear whether a copy of the memorandum was provided to Sickler and Mettenbrink, but they were ultimately informed of its conclusions and advised by Orr not to sell any more franchises without considerable changes to the disclosure statement.
A third version of the disclosure statement was created and used. Sickler stated he was told that the disclosure statement was now "compliant with every state," but Orr stated he also told Sickler that for out-of-state franchises, Sickler should get advice from local counsel. Orr stated that before the third revision of the disclosure statement, he had been under the impression that FTC requirements overrode state law. But he advised Sickler to obtain local counsel because he had become aware that state law could be more stringent than federal requirements.
The Iowa franchisee filed suit in Iowa and, according to Sickler, obtained personal judgments against Sickler and Mettenbrink. Barista's sold seven more franchises using the third disclosure statement, but was notified by the FTC in November 2005 that Barista's was under investigation. Holbrook contacted an attorney specializing in franchise law regarding the FTC investigation. The specializing attorney reviewed the franchise documents of Barista's and concluded those documentsincluding the third disclosure statementdid not comply with FTC rules. The attorney characterized the deficiencies as "major."
Recognizing that it now had a conflict of interest, Orr's law firm withdrew from representing Sickler and Mettenbrink. The attorney specializing in franchising law continued to represent Sickler and Mettenbrink, and Barista's, with respect to the FTC issues. The FTC civil penalty has been suspended indefinitely, and will not have to be paid so long as the disclosures of Barista's are truthful. By April 2006, however, the franchising of Barista's had "virtually been shut down." Orr's law firm has paid for the revision of the franchising *707 documents, as well as the research and second opinion obtained regarding the original franchising document.
Formal charges were filed against Orr on August 24, 2007, alleging that Orr had violated several sections of the Nebraska Rules of Professional Conduct and several sections of the now-superseded Code of Professional Responsibility. This court appointed a referee, and after a hearing, the referee found that Orr had violated his oath of office as an attorney. The referee also found that Orr had violated Canon 1, DR 1-102(A)(1), and Canon 6, DR 6-101(A)(1) and (2), of the Code of Professional Responsibility, as well as §§ 1.1 and 8.4(a) of the Nebraska Rules of Professional Conduct (now codified at Neb. Ct. R. of Prof. Cond. §§ 3-501.1 and 3-508.4(a)). DR 1-102(A)(1) and § 3-508.4(a) prohibit an attorney from violating the relevant rules of conduct.
Section 3-501.1 provides that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, preparation and judgment reasonably necessary for the representation." Similarly, DR 6-101 provides that a lawyer shall not handle a legal matter "which the lawyer knows or should know that he or she is not competent to handle, without associating with a lawyer who is competent to handle it," or "without preparation adequate in the circumstances." The referee recommended that a public reprimand be issued.
Orr did not take exception to the referee's report. This court granted the Counsel for Discipline's motion for judgment on the pleadings, but ordered briefing and argument on the appropriate sanction to be imposed.

ANALYSIS
As an initial matter, we first note that because some of the conduct at issue occurred prior to September 1, 2005, it is governed by the now-superseded Code of Professional Responsibility; other conduct occurred on or after September 1, the effective date of the Nebraska Rules of Professional Conduct, and is therefore governed by those rules.[2]
A proceeding to discipline an attorney is a trial de novo on the record.[3] To sustain a charge in a disciplinary proceeding against an attorney, a charge must be supported by clear and convincing evidence.[4] Violation of a disciplinary rule concerning the practice of law is a ground for discipline.[5]
As noted, no exceptions were filed in response to the referee's report. When no exceptions to the referee's findings of fact are filed by either party in an attorney discipline proceeding, this court may, in its discretion, consider the referee's findings final and conclusive.[6] We consider the finding of facts in the referee's report to be final and conclusive, and based on those findings, we conclude that the formal charges are supported by clear and convincing evidence. Specifically, we conclude that Orr violated his oath of office as an attorney,[7] DR 1-102(A)(1) and DR 6-101(A)(1) and (2) of the Code of Professional Responsibility, and §§ 3-501.1 and *708 3-508.4(a) of the Nebraska Rules of Professional Conduct. Accordingly, we grant in part the Counsel for Discipline's motion for judgment on the pleadings.
The basic issues in a disciplinary proceeding against an attorney are whether discipline should be imposed and, if so, the type of discipline appropriate under the circumstances.[8] Neb. Ct. R. § 3-304 states that the following may be considered as discipline for attorney misconduct:
(A) Misconduct shall be grounds for:
(1) Disbarment by the Court; or
(2) Suspension by the Court; or
(3) Probation by the Court in lieu of or subsequent to suspension, on such terms as the Court may designate; or
(4) Censure and reprimand by the Court[.]
....
(B) The Court may, in its discretion, impose one or more of the disciplinary sanctions set forth above.
Each attorney discipline case must be evaluated individually in light of its particular facts and circumstances.[9] This court will consider the attorney's acts both underlying the alleged misconduct and throughout the proceeding.[10] The determination of an appropriate penalty to be imposed also requires the consideration of any aggravating or mitigating factors.[11]
We have previously stated that "`the purpose of a disciplinary proceeding against an attorney is not so much to punish the attorney as it is to determine whether in the public interest an attorney should be permitted to practice.'"[12] We also note that while Orr's conduct caused financial consequences to his clients, the Nebraska Rules of Professional Conduct "are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability."[13] For those reasons, we accept the referee's recommendation of a public reprimand.
The referee explicitly found the existence of a number of mitigating factors, including the fact that Orr had practiced law for 40 years and has had no prior complaints or penalties. The referee noted that a number of clients, business and community leaders, and members of the bar sent letters of support and recommendation. Orr also has served the legal community and the community at large. And while the conduct occurred over a long period of time, only one client was involved, and Orr's misconduct was an isolated occurrence rather than part of a recurring pattern.
Although the Counsel for Discipline argued that the appropriate sanction in this case was a 60-day suspension, Orr failed to file exceptions to the referee's findings of fact. The referee found Orr negligently determined that he was competent and did not knowingly engage in the practice of law in which he was not competent. We have found no support in the case law for a suspension for incompetence without other misconduct, such as dishonesty.[14] Furthermore, *709 the ABA Standards for Imposing Lawyer Sanctions provide the appropriate sanction for an attorney's lack of competence under DR 6-101:
4.52 Suspension is generally appropriate when a lawyer engages in an area of practice in which the lawyer knows he or she is not competent, and causes injury or potential injury to a client.
4.53 Reprimand is generally appropriate when a lawyer:
(a) demonstrates failure to understand relevant legal doctrines or procedures and causes injury or potential injury to a client; or
(b) is negligent in determining whether he or she is competent to handle a legal matter and causes injury or potential injury to a client.[15]
That is not to say we are unconcerned about Orr's conduct. We have said that "[i]t is inexcusable for an attorney to attempt any legal procedure without ascertaining the law governing that procedure."[16] As a lawyer who has been practicing law for 40 years, Orr should have been aware that he was not competent to represent franchisors, and he was warned by another attorney that franchise law was a specialized area. At the very least, Orr should have done the research necessary to become competent in the area of franchise law. The fact that Orr did little or no research into state or federal franchising law until long after he first received notice that there was a problem with the franchising documents is inexcusable.
We take this opportunity to caution general practitioners against taking on cases in areas of law with which they have no experience, unless they are prepared to do the necessary research to become competent in such areas or associate with an attorney who is competent in such areas. General practitioners must be particularly careful when practicing in specialty areas. "If a general practitioner plunges into a field in which he or she is not competent, and as a consequence makes mistakes that demonstrate incompetence, the Code [of Professional Responsibility] demands that discipline be imposed...."[17]
Based upon our consideration of the record in this case, we conclude that Orr violated his oath of office as an attorney,[18] DR 1-102(A)(1) and DR 6-101(A)(1) and (2) of the Code of Professional Responsibility, and §§ 3-501.1 and 3-508.4(a) of the Nebraska Rules of Professional Conduct. For the above reasons, we accept the recommendation of the referee and issue a public reprimand.

CONCLUSION
The motion of the Counsel for Discipline is sustained in part and in part overruled. We adopt the referee's findings of fact and find by clear and convincing evidence that Orr violated DR 1-102(A)(1) and DR 6-101(A)(1) and (2) of the Code of Professional Responsibility and §§ 3-501.1 and 3-508.4(a) of the Nebraska Rules of Professional Conduct, as well as his oath of office as an attorney. It is the judgment *710 of this court that Orr should be, and hereby is, publicly reprimanded.
JUDGMENT OF PUBLIC REPRIMAND.
WRIGHT and CONNOLLY, JJ., not participating.
NOTES
[1] See Neb.Rev.Stat. §§ 59-1701 to 59-1762 (Reissue 2004).
[2] See, e.g., State ex rel. Counsel for Dis. v. Switzer, 275 Neb. 881, 750 N.W.2d 681 (2008).
[3] State ex rel. Counsel for Dis. v. Zendejas, 274 Neb. 829, 743 N.W.2d 765 (2008).
[4] Id.
[5] Id.
[6] Id.
[7] Neb.Rev.Stat. § 7-104 (Reissue 2007).
[8] State ex rel. Counsel for Dis. v. Petersen, 272 Neb. 975, 725 N.W.2d 845 (2007).
[9] Zendejas, supra note 3.
[10] See id.
[11] Id.
[12] State ex rel. NSBA v. Hogan, 272 Neb. 19, 27, 717 N.W.2d 470, 477 (2006).
[13] Nebraska Rules of Professional Conduct, Preamble ¶ 20.
[14] See, State ex rel. Counsel for Dis. v. Pinard-Cronin, 274 Neb. 851, 743 N.W.2d 649 (2008); State ex rel. Counsel for Dis. v. Mills, 267 Neb. 57, 671 N.W.2d 765 (2003); State ex rel. Counsel for Dis. v. Rickabaugh, 264 Neb. 398, 647 N.W.2d 641 (2002); State ex rel. Nebraska State Bar Assn. v. Holscher, 193 Neb. 729, 230 N.W.2d 75 (1975).
[15] ABA Standards for Imposing Lawyer Sanctions §§ 4.52 and 4.53 (2005).
[16] Holscher, supra note 14, 193 Neb. at 737, 230 N.W.2d at 80.
[17] Attorney Griev. Comm'n v. Brown, 308 Md. 219, 234, 517 A.2d 1111, 1118-19 (1986).
[18] § 7-104.