JOHN DEERE COMPANY OF MOLINE, A CORPORATION, APPELLEE, V. RAMACCIOTTI EQUIPMENT CO., A CORPORATION, APPELLANT.

147 N. W. 2d 765

Filed January 13, 1967. No. 36365.

Webb, Kelley, Green & Byam, for appellant.

Marchetti & Samson, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, and McCOWN, JJ., and POLLOCK, District Judge.

BOSLAUGH, J.

This is an action upon an account stated brought by John Deere Company of Moline against Ramacciotti Equipment Co. The plaintiff distributes agricultural and industrial machinery. From 1959 to 1963 the defendant was the plaintiff's industrial dealer in Omaha, Nebraska.

The plaintiff alleged that the balance due on the account stated was $17,165.07 with interest. The defendant denied that an account stated existed between the parties and prayed for an accounting. The defendant also claimed damages for the breach of an alleged promise to find a purchaser for the defendant's business.

By stipulation the action was tried to the court without a jury. The trial court found generally for the plaintiff; that an account stated was rendered on January 27, 1964; that the amount due the plaintiff was $17,165.07 with interest; and that the defendant's counterclaim should

be dismissed. The defendant's motion for new trial was overruled and it has appealed.

The judgment of the trial court in an action at law where a jury has been waived has the effect of a verdict of a jury and it will not be set aside unless clearly wrong. Weiss v. Weiss, 179 Neb. 714, 140 N. W. 2d 15. This case turns on the question of whether the evidence is sufficient to support the finding of the trial court that an account stated existed between the parties.

An account stated is an agreement between persons who have had previous dealings determining the amount due by reason of such transactions. Hendrix v. Kirkpatrick, 48 Neb. 670, 67 N. W. 759. The failure to object to an account rendered is admissible in evidence as tending to prove an acknowledgment of its correctness. Proof of an express promise to pay is not required.

The transactions between the parties were governed by a written contract known as a General Industrial Dealer's Contract. The term of the last contract executed by the defendant expired on October 31, 1962, but the defendant continued in business after that date. The contract provided that it was applicable to goods ordered by the dealer subsequent to the expiration of its term unless the parties had entered into a new general dealer's contract.

The contract further provided that the plaintiff retained title to all goods delivered under the contract until full payment of the indebtedness arising under the contract was made. The defendant was required to pay the invoice price of all goods at the times "provided in the terms of payment established by the Company." Apparently, this required the defendant to pay for all items ordered as received except for "complete machines and attachments" held in inventory.

Each month the plaintiff furnished the defendant a summary statement of its account which listed the amount due for inventory and all other items. Apparently, it was customary for the parties to make a settle-

ment each month for the transactions that had occurred since the last previous settlement.

The defendant's account with the plaintiff became delinquent in May and June 1963 in that the defendant refused to pay for "net items and parts" that he had ordered. On July 10, 1963, the plaintiff's credit manager and the manager of its industrial sales division discussed the defendant's account with William S. Ramacciotti, the defendant's president, general manager, and sole stockholder. During that conference a printed form, denominated "Settlement," was filled in and signed by the plaintiff's credit manager and Ramacciotti. Listed on the form were lease payments due the plaintiff, warranty claims due the defendant, and the net balance due the plaintiff amounting to $17,108.17. During that conference, the plaintiff's credit manager requested payment of the account, but Ramacciotti stated, " 'I just don't have it.' "

On July 21, 1963, the defendant published a newspaper advertisement stating that it was "closing out" and that all new and used equipment would be sold at discounts of up to 50 percent. At this time the defendant was indebted to the plaintiff for inventory items in excess of $77,000.

On July 31, 1963, there was a conference at the plaintiff's office attended by Ramacciotti, his counsel, the plaintiff's manager, its counsel, and several other representatives. The plaintiff demanded repossession of the goods in the hands of the defendant for which the defendant was indebted to the plaintiff. The result of the conference was that the parties agreed to a peaceable repossession of the goods.

The removal of the goods from the defendant's place of business to the plaintiff's branch house in Omaha commenced on August 1, 1963. The contract provided that the plaintiff would repurchase parts which were "new, unused, in good condition" and "listed as returnable under the Company's parts return policy" at current

wholesale prices less a discount of 15 percent. A controversy developed over the pricing and handling of the goods, including parts which the defendant wanted to return for credit. This resulted in a temporary halt in the repossession. After further correspondence and conferences between the parties, the repossession was resumed and completed. The defendant closed its business and Ramacciotti engaged in a different business.

As a result of the various conferences and negotiations which took place between the parties, adjustments were made, credits were granted by the plaintiff, and the items in controversy were compromised and settled. As an example, the plaintiff reduced its discount on returned parts to 14 percent, allowed a further credit of $1,100 on eleven tractors, granted an additional credit of $1,954.28 on other machinery, and allowed $2,177.57 on warranty claims.

On January 23, 1964, there was a conference at the plaintiff's office attended by Ramacciotti, his accountant and counsel, the plaintiff's manager of its industrial sales division, its counsel, and other representatives. Prior to this conference a summary statement of the defendant's account as of November 25, 1963, had been furnished to the defendant's counsel. During the conference the plaintiff agreed to an additional credit of $450.47 which represented a refund with interest from the defendant's contingent earnings account. This credit was shown on the next summary statement of the defendant's account furnished to the defendant and dated January 27, 1964. A subsequent credit, granted July 22, 1964, from the contingent earnings account reduced the balance to $17,165.07.

The plaintiff's evidence established that the purpose of the conference on January 23, 1964, was to complete the final settlement between the parties by obtaining payment of the balance due. According to the plaintiff's witnesses there was no dispute as to the amount

due. The only problem remaining was the financial ability of the defendant to pay the balance due.

The defendant's evidence, primarily the testimony of Ramacciotti, tended to contradict that of the plaintiff, at least in part. At most, this presented an issue of fact for the trial court. As we view the record, the evidence was sufficient to sustain the finding of the trial court that an account stated existed between the parties on January 27, 1964. The amount due the plaintiff, after taking into effect the credit granted July 22, 1964, was $17,-165.07 with interest. Since there was an account stated as between the parties, the defendant had no right to a further accounting.

There was a failure of proof with respect to the defendant's claim that the plaintiff breached its promise to find a purchaser for the defendant's business. The counterclaim was properly dismissed.

The judgment of the district court is affirmed.

AFFIRMED.