SHERRETS, SMITH & GARDNER, P.C., NOW KNOWN AS SMITH
& GARDNER, INC., APPELLEE AND CROSS-APPELLANT, V.
MJ OPTICAL, INC., AND OPTICAL ILLUSIONS, INC.,
APPELLANTS AND CROSS-APPELLEES.

610 N.W. 2d 413

Filed May 12, 2000.    No. S-98-1263.

David Geier, of Healey & Wieland Law Firm, for appellants.

H. Daniel Smith, of Dwyer, Smith, Grimm, Gardner, Lazer, Pohren & Rogers, for appellee.

WRIGHT, GERRARD, STEPHAN, and MILLER-LERMAN, JJ., and HANNON, Judge.

STEPHAN, J.

This is an action brought by the law firm of Sherrets, Smith & Gardner, P.C., subsequently known as Smith & Gardner, Inc. (the firm), to recover attorney fees allegedly owed by MJ Optical, Inc. Although Optical Illusions, Inc., was named as a codefendant, the record does not reflect any legal services provided to that corporation, and we therefore make no further reference to it in this opinion. The district court for Douglas County, Nebraska, entered summary judgment in favor of the firm. MJ Optical appealed from this order, and we moved the appeal to our docket on our own motion, pursuant to our obligation to regulate the caseloads of the appellate courts. See Neb. Rev. Stat. § 24-1106 (Reissue 1995). We conclude that the record reflects genuine issues of material fact which preclude summary judgment, and therefore reverse, and remand for further proceedings.

## BACKGROUND

In its operative amended petition, the firm alleged that it entered into an oral contract with MJ Optical whereby legal services were to be provided on an "hourly basis." The firm alleged that "[a] dispute has arisen regarding the legal services requested and the corresponding amount due for such legal services." It alleged that it charged MJ Optical a total of $86,861.75, of which $26,500 had been paid, and it sought judgment for the alleged balance due in the amount of $60,361.75, as well as prejudgment interest and costs. MJ Optical filed an answer consisting of a general denial.

Following discovery, the firm filed a motion for summary judgment. Evidence offered in support of and in opposition to the motion reflects that at all relevant times, Paul J. Gardner, a principal in the firm, was an attorney licensed to practice law in the State of Nebraska, and that Michael J. Hagge was the sole shareholder of MJ Optical. Gardner began performing legal services for MJ Optical in approximately 1986 and was responsible on behalf of the firm for the billings which are the subject of this action.

In March 1993, after various services had been performed, the unpaid balance on MJ Optical's account with the firm was approximately $13,699.26. A billing statement dated April 1993 added $27,712.13 to the balance for services relating to the acquisition by MJ Optical of the assets of a company known as Commercial Optical. Beginning in June 1993, and continuing until June 1994, additional charges for services rendered primarily in connection with the defense of a federal court lawsuit relating to the Commercial Optical acquisition increased the firm's billed amount to $85,821.67. MJ Optical made payments in the amount of $10,000 on December 8, 1994, $10,000 on December 21, 1994, and $6,500 on February 28, 1995.

In deposition testimony, Hagge stated his understanding that all legal work in connection with the acquisition of Commercial Optical was to be done for a flat fee of $25,000. In Gardner's deposition, he denied any such agreement. The record contains no engagement letter or other document constituting an agreement as to how billing for legal services was to be accomplished. Hagge stated in an affidavit that he was never certain how the fees were calculated, and Gardner testified that the only documents reflecting how the fees were to be determined were the monthly billing statements.

In this regard, the record includes two sets of billing statements dating from February 1992 to February 1995. There are several discrepancies between the two sets of statements, including different interest charges, work entries included on one statement but not the other, and identical work entries having different listed dates of performance. In his deposition, Gardner could not explain the existence of the two sets of statements or the discrepancies between them.

The billing statements vary as to the specificity with which the legal services are described. None of the work entries contain a corresponding notation of the time spent, the attorney who performed the work, or the hourly rate charged. Furthermore, none of the work entries on billing statements dated before August 1993 reflect the date on which the services were performed. Some, but not all, of the billing statements include a printed statement that provides in part: "While the Firm uses 'standard' hourly rates which change from time to time without

notice, nonetheless, other rates may be used depending on degree of complexity, intensity of effort, potential liability, or result achieved." Although Gardner testified in his deposition that this represented the policy of the firm, his testimony was disputed by James D. Sherrets, the senior member of the firm during the period in question, who testified by deposition that the method of billing was discretionary with each attorney.

In Gardner's deposition testimony, he could not testify with certainty as to his hourly rate during 1993 and 1994, or whether his rate ever increased. He could only speculate as to his hourly rate at that time. Gardner admitted that Hagge was never asked to sign an engagement letter and that no document existed specifying the hourly rate to be charged for legal services provided to MJ Optical or any other information regarding the manner in which the firm would determine its fees.

Sherrets described Gardner's billing practice in a deposition offered in opposition to the motion for summary judgment. Sherrets stated that he occasionally reviewed Gardner's bills to MJ Optical and noticed that Gardner

> had a habit of stripping out all of the underlying data, specifically who had worked on the account, how much had been logged-in time, what the billing rates were, the days on which the service was performed, all of which would allow someone to go back if you had even a portion of it and figure out how much you were really being billed for something.

Sherrets also testified that Gardner thought he could optimize his income by generating clients and then delegating the actual work to the associates in the firm rather than performing the work himself. During the period in question, Sherrets became concerned regarding Gardner's billing practices "because of the bills he was sending out relative to the time he was actually working." As a result of these concerns and others, Sherrets severed his business relationship with Gardner in 1995.

Rodney A. Halstead, a former associate with the firm, testified by deposition that he performed legal work for MJ Optical between 1992 and 1994. Halstead was able to identify several entries on billing statements sent to MJ Optical between 1992 and 1994 for work he was reasonably certain that he had per-

formed. Halstead disputed the billing for over $27,000 in attorney fees during April 1993 for work done on the Commercial Optical acquisition. Halstead stated that Gardner would have been required to work 40 hours per week for 5 weeks at $125 per hour in order to generate a fee of that amount. Halstead testified that he worked on the transaction with Gardner and did not believe that it involved that amount of time.

In his affidavit and deposition testimony, Hagge indicated that he was personally involved in dealings with Gardner. Hagge stated that the comptroller of MJ Optical received the bills from the firm and would discuss with Hagge those fees which the comptroller felt were excessive. Hagge stated that until June 1992, he never questioned the bills received from the firm, which he paid in full. However, he disagreed with the amounts which the firm billed to MJ Optical in 1993 and 1994.

In a letter to Hagge dated June 8, 1994, Gardner outlined a proposal to settle their fee dispute by reducing the outstanding balance to $60,000 if Hagge would agree to pay six $10,000 monthly installment payments before the end of the year. In this letter, Gardner reminded Hagge of his statement in a previous conversation that " 'this has gone on long enough and I will get you (us) paid soon, I give you my word of honor.' " Hagge testified that he remembered this conversation with Gardner, but that his statement was, "I will pay you what I owe you." The letter directed Hagge to sign in the space provided and return it to Gardner if he agreed to the settlement offer. Hagge testified that he did not accept the settlement offer but paid the firm the amount he believed to be owed by MJ Optical.

In its order dated November 25, 1998, the district court concluded:

> Defendants' partial payments toward the entire amount shows defendants' knowledge, agreement and acceptance of the greater sum.
>
> Defendants were aware of the complexity and protracted nature of plaintiff's representation in all of its aspects. Although the hourly charges may not have been discussed and even may have changed, the defendants never inquired or complained about the plaintiff's billing. Defendants' partial payments and lack of stated concern

for over 3 years demonstrates defendants' acceptance of plaintiff's billings as fair and reasonable.

The attorney fee billings in this case constitute an account stated. And further, the evidence shows as a matter of law that plaintiff's legal fees were fair and reasonable.

## ASSIGNMENTS OF ERROR

MJ Optical contends that the district court erred in (1) granting summary judgment to the firm, (2) holding that the firm was entitled to judgment based upon a theory of account stated when the pleadings do not allege a cause of action on that basis, (3) holding that the firm had established an account stated, and (4) holding that the attorney fees sought by the firm were fair and reasonable as a matter of law.

The firm contends on cross-appeal that the district court should have made specific findings that it was entitled to prejudgment interest pursuant to Neb. Rev. Stat. § 45-103.02 (Reissue 1998).

## STANDARD OF REVIEW

■ Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Pfeifer v. E.I. Du Pont de Nemours & Co.*, 258 Neb. 756, 606 N.W.2d 773 (2000); *Fossett v. Board of Regents*, 258 Neb. 703, 605 N.W.2d 465 (2000); *Derr v. Columbus Convention Ctr.*, 258 Neb. 537, 604 N.W.2d 414 (2000).

■ Where reasonable minds differ as to whether an inference supporting the ultimate conclusion can be drawn, summary judgment should not be granted. *Dvorak v. Bunge Corp.*, 256 Neb. 341, 590 N.W.2d 682 (1999).

■ In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Knoll v. Board of Regents*, 258 Neb. 1, 601 N.W.2d 757 (1999); *Bargmann v. State*, 257 Neb. 766, 600 N.W.2d 797 (1999);

*Schweitzer v. American Nat. Red Cross*, 256 Neb. 350, 591 N.W.2d 524 (1999).

## ANALYSIS

At the outset, we disagree with the district court's characterization of this case as an action on an account stated. An "account stated" is an agreement between persons who have had previous dealings determining the amount due by reason of such transactions. *John Deere Co. of Moline v. Ramacciotti Equip. Co.*, 181 Neb. 273, 147 N.W.2d 765 (1967). Generally, "[a]n action on an account stated is a new and independent cause of action founded on the agreed balance due upon the account rendered." 1 Am. Jur. 2d *Accounts and Accounting* § 48 (1994). In such an action, the plaintiff "must allege that the account was, in fact, stated and agreed to, although the failure to expressly allege the account stated may be waived by joining issue on the matter." *Id.* In the instant case, the firm did not allege an account balance agreed upon by the parties, but, rather, expressly alleged an oral contract for legal services to be performed on an hourly basis, and a subsequent "dispute . . . regarding the legal services requested and the corresponding amount due for such legal services." The purpose of pleadings is to frame the issues upon which a cause is to be tried, and the issues in a given case will be limited to those which are pled. *Buffalo County v. Kizzier*, 250 Neb. 180, 548 N.W.2d 757 (1996). Thus, we treat the action as one on an oral contract for legal services, as it is characterized in the amended petition.

We have recognized that courts have traditional authority to supervise the charging of fees for professional services under their inherent power to regulate the practice of law. *State ex rel. FirsTier Bank v. Mullen*, 248 Neb. 384, 534 N.W.2d 575 (1995). See, also, *Kirby v. Liska*, 214 Neb. 356, 334 N.W.2d 179 (1983). An attorney may not recover for services rendered if those services are rendered in contradiction to the requirements of professional responsibility and are inconsistent with the character of the profession. *Zimmerman v. FirsTier Bank*, 255 Neb. 410, 585 N.W.2d 445 (1998); *State ex rel. FirsTier Bank v. Mullen, supra*. Canon 2, DR 2-106, of the Code of Professional Responsibility provides in part:

(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.

(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

See, also, *Bauermeister v. McReynolds*, 253 Neb. 554, 571 N.W.2d 79 (1997), *modified* 254 Neb. 118, 575 N.W.2d 354 (1998); *Kirby v. Liska, supra.*

In support of its allegation that the charges reflected on its billing statements were fair and reasonable, the firm relies upon the opinion expressed by Gardner in his affidavit that amounts billed for fees and out-of-pocket expenses were "fair and reasonable by the community standards for Omaha, Nebraska." Although the record contains no opinion by an attorney specifically refuting this statement, we do not regard Gardner's opinion as conclusive on the issue of whether the fees charged were fair and reasonable. In *Grimminger v. Cummings*, 176 Neb. 142, 146, 125 N.W.2d 613, 615 (1963), an action by an attorney to recover a fee, we held that the "value of an attorney's services is ordinarily a question of fact for the jury" and noted that "[c]ircumstances and the testimony of nonexpert witnesses may

form a basis for the fact determination of reasonable values of an attorney's services." In *Grimminger*, we specifically rejected the attorney's contention that the verdict was inadequate because it was less than the amount established by undisputed expert testimony. We stated:

> Such expert testimony is advisory, not prescriptive in nature, its weight and credibility are solely for the jury, the value fixed may be below the range testified to by the experts, and it is not required that there be opposing proof of an expert nature. . . . The jury was free to accept any portion or all of the expert testimony or to reject it . . . .

(Citations omitted.) *Id.* at 147, 125 N.W.2d at 616. Similarly, in the context of an application for statutory attorney fees pursuant to Neb. Rev. Stat. § 44-359 (Reissue 1998), we have held that "[t]here is no presumption of reasonableness placed on the amount offered by the party requesting fees." *Koehler v. Farmers Alliance Mut. Ins. Co.*, 252 Neb. 712, 719, 566 N.W.2d 750, 755 (1997).

Thus, we conclude that a finder of fact would not be bound by Gardner's opinion that the fees sought were fair and reasonable. Indeed, there is evidence in the record from which it could reasonably be concluded that they were not. Hagge testified that a significant portion of the legal services at issue were to be included within a flat fee of $25,000, rather than on an hourly basis as alleged by the firm. Even if an agreement for billing on an hourly basis existed, this record does not include the total number of hours spent in providing legal services during each billing period; the identity or level of experience and expertise of the attorneys who performed the services; or the hourly billing rate utilized in arriving at the fees charged. In many instances, the description of the services performed is brief and cryptic. For example, the statement dated April 1993 includes an itemization of 32 services for which $27,712.13 was billed. Five items are described simply as "attention to acquisition" and two as "continued attention to acquisition." A finder of fact could also construe the unexplained discrepancies in the two sets of billing statements, as well as the testimony of Sherrets and Hagge, as weighing against the reasonableness of the fees in dispute. Viewing the evidence in a light most favorable to MJ

Optical, as required by the applicable standard of review in this appeal from the grant of summary judgment, we conclude that a finder of fact could determine from the evidence that the firm failed to establish a prima facie case that the fees which it seeks to recover are fair and reasonable, and the district court therefore erred in making this determination as a matter of law.

## CONCLUSION

For the reasons outlined above, we conclude that the record reflects genuine issues of material fact which preclude judgment as a matter of law in favor of the firm. Accordingly, the order granting summary judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion. Because of this disposition, we do not reach the issues raised by the cross-appeal.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

HENDRY, C.J., and CONNOLLY and MCCORMACK, JJ., not participating.